Bellows *v*. Adm'r of Allen.

━━●◉●━━

Hiram Bellows *v*. Administrator of George A. Allen.

*Sheriff's liability upon execution.    Control by creditor.    Surety.*
*Subrogation.*

No action can be sustained by an execution creditor against the sheriff, for the default of his deputy in not paying to the creditor the avails of property sold upon the execution, if it appear, that the property was sold by the deputy upon credit, by direction of the creditor, or that such directions were given by those who were interested, as sureties, in having the property sold, and were subsequently ratified by the creditor.

Where the liability of the sheriff upon execution is for not applying the avails of property sold, so that, upon judgment being recovered against him, he would not be entitled to be subrogated to any rights of the creditor, those being in effect extinguished, it is competent for those of the execution debtors, who are sureties merely, to take an assignment of the execution to some third person for their own benefit, upon paying the creditor the amount due to him.

But where the liability of the sheriff is for a mere default in not collecting or returning the execution, so that he would be entitled, upon being held liable for the default, to be subrogated to the rights of the creditor, it is not competent for the sureties to take an assignment of the interest of the creditor, even to a third person, for their benefit; but a payment of the amount of the execution by the sureties, for the purpose of procuring such assignment, will extinguish the right of action against the sheriff.

And when the liability of the sheriff has been once extinguished by such payment, it cannot be revived by a re-conveyance of the judgment and execution by the assignee to the creditor.

Trespass on the Case, brought against the defendant Allen, as sheriff of the county of Chittenden, for the default of his deputy, in two counts. In the first count the default alleged was the not paying to the plaintiff the amount of an execution, for $571,40, against

xxiii.      22

Timothy W. R. Nichols, Timothy S. Nichols, John Hand, Wesley Hazeltine, Silas McClellan and Luther M. Bates, which it was alleged the deputy had collected. In the second count the default alleged was the not collecting or returning an execution for $101,91, against the same debtors. Plea, the general issue, and trial by jury, March Term, 1850,—BENNETT, J., presiding.

On trial the plaintiff gave evidence tending to prove, that the deputy of Allen, Amos W. Butler, had received the execution described in the first count, and collected its amount, but had neglected to pay the amount to the plaintiff; and also evidence tending to prove the allegations in the second count.

The defendant then offered and was allowed to prove, that the execution debtors Hand, Hazeltine, McClellan and Bates were sureties for the debtors Timothy W. R. Nichols and Timothy S. Nichols, in both executions; that previous to the notes, upon which these executions were obtained, becoming due, the sureties applied to the plaintiff to bring suits upon the notes, as soon as they became due, and attach the property of the principals, and the plaintiff consented to do so; that when the notes fell due, Hazeltine went with the plaintiff to an attorney, and procured writs, and then executed and delivered to the plaintiff an agreement in writing, in which, after reciting that one of the writs had been issued, at his request, as a trustee process, he agreed to indemnify the plaintiff against all costs, which should accrue to him by reason of having summoned the trustees; and that Hazeltine took the writs and had the property of the principals attached thereon; that judgments were obtained in the two suits, as alleged in the declaration, and the executions were delivered to Butler, the deputy,—the execution described in the second count being delivered to him October 8, 1841, and the other October 26, 1841, and receipts were executed to the plaintiff therefor; that Butler advertised and sold, upon the execution described in the first count, certain property of the principals, which was mentioned in his return as having been attached upon the original writ, and paid to the plaintiff $192,00; that at the time of the sale of this property the sureties directed the deputy to sell on credit in sundry cases of purchases over $5,00 in amount, and pursuant to such directions the deputy did sell a part of the property upon credit; that on the twelfth day of February, 1842, the plaintiff and the sureties

met, for the purpose of arranging the matter between them, and the four sureties then executed and delivered to the plaintiff a promissory note for $509,67, in full satisfaction for his claim,—which note was also signed by one Faxon, as surety for the other signers; that on this occasion Bates, one of the sureties, told the plaintiff, that Butler had not yet collected all the amount of the sales, and that he had, by their directions, sold some of the property upon credit,—to which the plaintiff made no reply.    And it appeared, that at this time the plaintiff executed and delivered to Faxon assignments, in writing, of both executions, and received agreements, in writing, signed by Hand, Hazeltine, McClellan, Bates and Faxon, to indemnify him against all costs and expenses accruing from any suits which should be commenced to obtain satisfaction of the executions, and also to pay the costs of obtaining the judgments in the original suits;—and the testimony tended to prove, that it was not intended, by this arrangement, to extinguish the judgments and the claim against the sheriff, but to keep them in force and vest the legal title in Faxon. The testimony on the part of the plaintiff tended to prove, that the attorney, who obtained the judgments in the original suits, acted solely as the attorney of the plaintiff in so doing, and had nothing to do with the sureties, and that no other agreement was made between the plaintiff and Hazeltine, than what was evidenced by the writing then executed, above recited.    It also appeared, that, after the note of February 12, 1842, was executed, Faxon then having left the state, Hand, Hazeltine, McClellan and Bates paid the balance due upon that note, on which there was then an indorsement of between $200,00 and $300,00, by giving their several notes for each an equal amount, being about $75,00 each,—a part, only, of which had since been paid.

The plaintiff offered in evidence an assignment in writing, not under seal, signed by Faxon, dated May 22, 1843, transferring to the plaintiff the judgment which had been then recently obtained, in favor of the plaintiff, in this suit, (but which was subsequently vacated,) amounting to $335,33,—specifying that $288,39 of this amount was indorsed upon the note of February 12, 1842, and the residue, $46,94, was applied to pay the costs of obtaining the judgments in the original suits,—and it appeared that Faxon, at the time of trial, resided without this state; but the court excluded the evidence for

all purposes, except to show to what date Faxon was in this state, and for that purpose it was admitted.   The court allowed this evidence, which was all by parol except the written instruments above mentioned, to go to the jury, to show the contract of the parties to be different from that stated in the writings and inconsistent with it.

The plaintiff requested the court to charge the jury, that there was no evidence of any authority from the plaintiff to direct the sale by Butler to be made upon credit, nor any ratification thereof by the plaintiff; that the only question, in reference to the transaction of February 12, 1842, was, whether that extinguished the judgments, or only operated an assignment of them to Faxon, or in any way kept them in force and the claim a subsisting one against Butler, or the sheriff,—and if they found, that, by that agreement, the claim or judgments were not to be extinguished, but to be kept on foot for the benefit of whoever might be concerned, or if they found, that the real arrangement, then made upon that subject, was expressed in the written instruments then executed, and which were in evidence, then, so far as the question of payment is concerned, the plaintiff is entitled to recover ; that it was of no consequence, who was the real owner of the judgments, provided they were in any manner kept in force and Butler or the sheriff had not paid them; that the sureties might pay the plaintiff for assigning the judgments to Faxon, and so keep them in force without impairing the right of action against the sheriff; and that the plaintiff, or any other person, might again acquire the ownership of them, without injury to the rights of any one.

But the court charged the jury, that there was no evidence tending to show any authority so to sell on credit,—but that there was evidence tending to prove a ratification of such sale by the plaintiff; and that, if the jury found, that the plaintiff did ratify such sale, then the plaintiff could not recover upon the first count; but that this would not affect the second count.   The court farther instructed the jury, that if they found, that, on the twelfth of February, 1842, the plaintiff was paid and satisfied his judgments, then he could not recover ; but if the parties, by that arrangement, did not pay the judgments, but they were kept in force and had not since been paid to the plaintiff, either by the parties, or the deputy, then, on this part of the defence, the plaintiff would be entitled to prevail ; but if the jury

Bellows *v.* Adm'r of Allen.

found, that the note for $509,67 had since been paid by Butler, or by the sureties, or that $300,00, or any other sum, had been paid upon it, it would defeat this action to the extent to which such payment had been made.

Verdict for defendant. Exceptions by plaintiff.

*C. D. Kasson* for plaintiff.

1. There was no evidence to prove a ratification by Bellows of the instructions to the deputy, by the co-defendants, to sell upon credit. At the time the plaintiff was informed of this, there was nothing in the nature of the communication requiring a reply; and in such cases mere silence is not evidence of an admission. At most, it can only be regarded as notice to the plaintiff, that Butler had violated his duty.

2. There was error in permitting parol evidence to go to the jury, to show that the contract between the parties was different from that evidenced by the written instruments.

3. The assignment from Faxon to the plaintiff, dated May 22, 1843, was evidence of the manner, in which so much of the $509,00 note had been paid; and the payment having been fruitless, it showed the note unpaid, and hence destroyed so much of the evidence tending to sustain the defence, that the note was paid.

4. The charge was erroneous, in putting the right to recover on the double fact, that the judgments were kept in force and had not since been *paid by the parties.* This might be true, if the payment were by the principals; but if the sureties, the other parties, paid them, but still kept them in force, it is not an extinguishment, as the sureties had a right to do so for their own protection. *Clason* v. *Morris,* 10 Johns. 524. *Wadington* v. *Vredenburgh,* 2 Johns. 227. *Stevens* v. *Cooke,* 1 Johns. Ch. R. 425. *Cheeseborough* v. *Willard,* Ib. 409.

5. It was error to direct a verdict for the defendant, if the jury found, that the 509,00 note had been paid, or to instruct them, that, to the extent to which it had been paid by the sureties, it would operate a bar *pro tanto.* The assignment of the executions to Faxon was a part of the consideration of the 509,00 note; and if it was possible to keep the judgment in force, it was of no importance, whether the note was paid, or not,—for it could not defeat Faxon's rights as assignee.

6. The plaintiff was entitled to the charge requested. The contracts, which were executed February 12, 1843, gave to the parties certain rights, and do of themselves show, that the judgments were in fact kept in force. But the court, in effect, referred that question of law to the jury.

7. The plaintiff was also entitled to the charge requested, that it was unimportant who owned the judgments, or executions, if they were kept in force and the sheriff or Butler had not paid them. The owner of them had a right to procure satisfaction, and the debtors were bound to render satisfaction; these two things must concur, before the right of the creditor to enforce satisfaction is gone against every one. When the property of Nichols, the principal, was sold, it did, as to Nichols and his sureties, extinguish *pro tanto* the executions, but it did not satisfy the creditor, as he did not receive the avails. Hence, although he could not maintain an action for so much of it as was thus extinguished against the debtors, yet he had a right to pursue the sheriff, who had the money.

*J. Maeck* for defendant.

No stronger evidence could be given of a subsequent ratification of the acts of an agent, than the case presented by the exceptions in reference to the directions to the deputy to sell upon credit. The plaintiff does not appear to contest the principle of law, that if the deputy, under the direction of the creditor, previously given or subsequently ratified by him, sell upon credit, instead of selling for cash, and fail to make his collections and pay the money, the sheriff is not responsible. This principle is to well settled by authority, to be now contested; and all the facts in the case clearly evince, that the deputy, in the management of these executions, was entirely under the control of the creditor and his agents. 15 Vt. 414.

The language used in the bill of exceptions plainly imports, that the note for $509,67 was given in satisfaction of the judgments; and the jury, under the instructions of the court, have found, that the judgments, in fact, were paid to the plaintiff, either by Butler, or the sureties. If so, the plaintiff cannot, under any circumstances, maintain this action. He has sustained no damage; and when a judgment has been paid, either by the principal, or by the sureties, the judgment is extinguished. *Allen v. Ogden*, 12 Vt. 9.

The opinion of the court was delivered by

REDFIELD, J. The plaintiff proved, that the deputy, Butler, collected the money upon the first execution, and that he had not returned, or paid, the second execution. The defence attempted was, that the plaintiff directed the deputy to sell the property on the first execution on credit, so that the defendant was not liable for the acts of the deputy in regard to that execution, and that both executions had been paid to the plaintiff.

The large execution was received by the deputy October 26, 1841. The smaller execution was received on the eighth of October, 1841. It seems, by a memorandum on the large execution, that property had been attached upon the writ; but whether the same or any other property was attached on the small execution does not appear. The testimony showed very clearly, that Bellows suffered the sureties in the execution, Bates, Hand, &c., to control the collection of the execution, and finally assigned both executions to Faxon, at their request, taking their note for the balance due upon them,—Faxon signing as their surety.

From all that appears in the case we must conclude, that the testimony tended very clearly to show, that the plaintiff did ratify the act of the sureties in directing the deputy to sell on credit. His mere silence, when informed of the fact, would not perhaps be of much importance; but the whole transaction, taken together, shows, that the suit was instituted, the property attached, and sold, at their suggestion, and under their direction, and that subsequently Bellows gave a full ratification of the whole, by assigning the judgment to Faxon in trust for them. And so far as we learn with much certainty, the legal title now remains in Faxon, for the benefit of these same sureties.

Under these circumstances it would be wonderful, if the very parties, for whose benefit the suit is now confessedly proceeding, could evade the effect of their own instructions to the deputy. We find no difficulty upon this point of the case.

And this, we suppose it fair to understand from the case, extends to all the balance due upon the large execution. If that were not so, we might have some difficulty in saying, that the charge of the court was altogether correct, as to the evidence tending to show payment of this execution.

For we think, when property of the principals had been attached by the sheriff's deputy, and the execution levied upon it, although that property was so disposed of, that the creditor could not pursue the sheriff, on account of his controlling the deputy, yet the debtor undoubtedly might recover against the sheriff, if he gave no consent to a sale on credit. And where the liability of the sheriff is for not applying the avails of property sold, so that, upon judgment being recovered against him, he would not be entitled to be subrogated to any rights of the creditor, those being in effect extinguished, in such case we think it competent for the sureties to take an assignment of the execution to some third person, for their benefit, upon paying to the creditor the amount due to him,—as was done in the present case. And if they have this right, we do not see any testimony in the present case, tending to show anything else, but such an assignment, or any payment, but to procure such an assignment. As they clearly could thus keep the execution on foot, we see not why they did not do this. But the difficulty with this part of the case seems to us to be, that the case finds, that this property was sold by direction of these same sureties, who now, in reality, claim to recover of the sheriff.

As to the small execution, nothing in the case shows, that the sheriff's deputy ever took property upon it;—of course, the debtors have not paid it. And the sheriff, if he is to be made liable, as it will be for a mere default in not collecting or returning it, upon being adjudged liable would be entitled, to that extent, to be subrogated to the rights of the creditor and go against all the debtors, sureties as well as principals, and thus recover of these same debtors the same money they are now attempting to recover of him. When the same party is virtually both plaintiff and defendant, the action cannot be maintained. For any default of the deputy of this character, we think, as he could claim to stand in the place of the creditor, upon being adjudged liable, it is not competent for the sureties to to take an assignment, even to a third person, for their benefit, of the interest of the creditor; and that, as to this execution, the payment ought to be regarded as an extinguishment of any such claim, as that described in the second count.

This renders it unnecessary to consider the testimony offered to show a re-conveyance to the plaintiff; as, if the sheriff's liability

were once extinguished, it could not be revived by a re-conveyance. But we do not think such a paper, as was offered, any competent evidence of a re-conveyance.   Such evidence may sometimes have been received ; but it is evidently the mere declarations of a third person, a matter wholly *inter alios.*   The ground, upon which this last point is decided, was held in a case in chancery in Windsor county some years since.                      Judgment affirmed.